## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

JESUS RANGEL, )
                        )
           Plaintiff, )
     vs. )          1:06-cv-018-SEB-VSS
                        )
SEARS, )
                        )
          Defendant. )

**Entry Discussing Defendant's Motion for Summary Judgment**

As used in this Entry, "Sears" refers to defendant Sears, Roebuck and Company, and "Rangel" refers to plaintiff, Jesus Rangel.

This action is before the court on Sears's unopposed motion for summary judgment.

Whereupon the court, having read and examined the pleadings and Sears's motion just described, now finds that the motion for summary judgment must be **granted.** This conclusion rests on the following facts and circumstances:

1.     Rangel alleges in this case that while employed by Sears in Anderson, Indiana as a Tool Consultant he was the victim of discrimination, retaliation, and defamation. His federal claim of discrimination is brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § Section 2000(e), *et seq.,* and 42 U.S.C. § 1981. Under Title VII, he presents two claims of discrimination based on his national origin and one claim of retaliation. Only the former two claims could be asserted pursuant to § 1981. Jurisdiction over the federal claims exists through 28 U.S.C. § 1331. The defamation claim is brought pursuant to Indiana state law and invokes the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

2.     As noted, Sears seeks the entry of summary judgment, which "is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the Federal Rules of Civil Procedure). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

3.  "'It is well-settled that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)). Rangel has not met this burden here, nor has he attempted to do so. Thus, the well-supported facts relied on by Sears in support of its motion for summary judgment are accepted as true for the purpose of the court's resolution of that motion. *Corder v. Lucent Techs., Inc.,* 162 F.3d 924, 927 (7th Cir. 1998); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This is the result of Local Rule 56.1(h), of which Rangel was notified.

4.  Sears has established the following through the uncontested material filed in support of its motion for summary judgment.

a.  Sears prohibits discrimination on the basis of national origin, ethnicity, race and any other protected category. In addition, Sears' policy prohibits any form of unlawful retaliation. This policy applies to disciplinary actions, terminations, and all other terms and conditions of employment. Rangel was aware of this policy during his employment with Sears.

b.  As a Tool Consultant, Rangel's duties included providing customer service in solving customers' problems or questions related to tools. His customer service duties extended outside of his own department as he was required to do anything he could to assist customers.

c.  Rangel speaks Spanish and would translate for Spanish-speaking customers from time to time as part of providing customer service. His duties included selling merchandise as well as service agreements. He was also responsible for optimizing merchandise presentation and appearance. Additionally, he was required to support Sears' business strategy, assist management and to serve as back-up in other departments when necessary.

d.  On approximately June 23, 2005, during a morning meeting, Rangel was directed by management to repair some toolboxes sitting in the aisle in the hardware department. When given this assignment, Rangel complained that such a task was maintenance associate Jim Hollingsworth's job. However, Mr. Hollingsworth was out sick that day, so Rangel was directed to perform the work. Later that day, the store manager found the toolboxes sitting in another employee's office. Rangel had not repaired them. Rangel was counseled by the manager, but had ignored the instructions to repair the tool boxes because he did not consider it his job to do such repairs. The manager issued Mr. Rangel a final written warning for insubordination.

e.  On approximately July 17, 2005, several Sears employees paged Rangel to assist with two Spanish-speaking customers. Rangel, never responded to the pages, claiming he did not hear them, but that even if he had heard them, he would not have helped translate for the customers. The Spanish-speaking customers had

to wait approximately thirty minutes while Sears employees paged Rangel four times and looked for him throughout the store. Rangel decided it was not his job to translate, and he refused to do so, even though he admitted that such behavior was rude and disrespectful to Sears customers. Rangel also refused to help customers outside of his department, even though that was part of his job.

f.      Rangel's merchandise sales for the month of June were extremely low compared to his sales from previous months. This was suspicious, because Rangel had been informed that he needed to increase the number of service agreements he sold in relation to the number of merchandise sales he made. By using another associate's number, Rangel seemed to have increased his service agreement sales percentage while harming another associate's sales performance. This maneuver was prohibited by a written Sears policy.

g.      Based on the concerns of management, loss prevention investigated Rangel's sales activities. On approximately August 1, 2005, Ms. Appleby pulled journal tape from the cash register on which Rangel was ringing up sales. His associate number was not on the journal tape. Ms. Appleby reviewed the surveillance video tape for that day. The video clearly showed Rangel ringing up sales on the same cash register under another associate's number. Rangel admitted to loss prevention and management that he had used another associate's number in violation of Sears policy.

h.      On August 1, 2005, the store manager terminated Rangel's employment due to his aggregate discipline record at Sears, with the most recent incident being the violation of Sears policy in the fashion described in paragraphs 4.e. and 4.f. of this Entry.

i.      At no time did Rangel indicate to the store manager that he perceived he was being retaliated against by anyone at Sears because of his Equal Employment Opportunity Commission ("EEOC") charges of discrimination.

j.      Prior to the events recited above, Rangel filed his first charge of discrimination on February 15, 2005. His first charge of discrimination alleged that he should have been promoted to Hard Lines Lead in August 2004, because he was more qualified than Denise Netherton. However, Sears never filled the Hard Lines Lead position that Rangel sought. Ms. Netherton was hired into the Brand Central Lead position. This was Ms. Netherton's area of expertise. Three to four months later, Sears eliminated the Brand Central Lead position and transferred Ms. Netherton into a position as Hard Lines Lead. Sears did not accept applications for this position. Ms. Netherton was simply transferred when her job was eliminated. Rangel believes he received his Notice of Right to Sue from the EEOC regarding the charge of discrimination filed based on the foregoing matter shortly after May 25, 2005.

k.      On May 10, 2005, Rangel filed a second charge of national origin discrimination under Title VII, complaining that he was not considered for the lead position given to Ms. Netherton. This position led both the hardware and appliance departments. Rangel believed he was more qualified because he knew more about hardware than Ms. Netherton. Rangel does not know whether or not Ms. Netherton has experience with hardware, though Rangel himself had no experience with appliances.  Rangel admitted that the store manager offered him an opportunity as Soft Lines Lead, but Rangel turned it down. The EEOC issued its Notice of Right to Sue regarding these matters on June 16, 2005.

l.      On August 4, 2005, Rangel filed his third EEOC charge, alleging retaliation in violation of Title VII based on the termination of his employment on August 1, 2005. The EEOC issued its Notice of Right to Sue relative to the charge of retaliation on December 19, 2005.

m.      Rangel filed this lawsuit on January 6, 2006.

5.      Sears argues that Rangel's claims of national origin discrimination were not timely filed. As recited above, Rangel filed two charges of discrimination with the EEOC based on his national origin.  The Notice of Right to Sue from the EEOC regarding the first charge of discrimination was issued in May 25, 2005. The Notice of Right to Sue from the EEOC regarding the second charge of discrimination was issued on June 16, 2005. The present lawsuit was filed, as already noted, on January 6, 2006. Because this lawsuit was not filed within 90 days of Rangel's receipt of the Right to Sue Notice issued relative to either of his claims of discrimination based on nation origin, those claims are not available for resolution here. *Houston v. Sidley & Austin,* 185 F.3d 837, 839 (7th Cir. 1999); 42 U.S.C. § 2000e-5(f)(1). Sears' argument on the untimely filing of this case in relation to those charges is persuasive, is unopposed, and entitles it to the entry of summary judgment without further exploration of the merits of such claims.

6.      Of the federal claims, this leaves for resolution Rangel's claim based on alleged retaliation, asserted pursuant to Title VII.  See *Hart v. Transit Mgmt. of Racine, Inc.,* 426 F.3d 863, 866 (7th Cir. 2005) ("Retaliation is grounds for relief under Title VII of the Civil Rights Act of 1964, see 42 U.S.C. § 2000e-3(a), which "makes it unlawful for any employer to discriminate against an employee for opposing a practice made unlawful by the Act," but § 1981, in contrast, encompasses only racial discrimination on account of the plaintiff's race and does not include a prohibition against retaliation for opposing racial discrimination.")(internal citation omitted).

7.      "It is well-established that a plaintiff in a Title VII case may proceed under a direct or indirect method of proof." *Butts v. Aurora Health Care*, 387 F.3d 921, 924 (7th Cir. 2004) (citing *Mateu-Anderegg v. School Dist.,* 304 F.3d 618, 623 (7th Cir. 2002)); see also *Stone v. City of Indianapolis Public Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

a.      Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003); *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir. 1997). In short, "[d]irect evidence 'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'" *Rogers,* 320 F.3d at 753 (citation omitted). "A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Rhodes v. Ill. Dep't of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004)(quoting *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994)). "That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003).

b.      Rangel has come forward with no direct evidence of retaliation. What he must do to survive Sears' motion for summary judgment, therefore, is establish the elements of a *prima facie* case under the indirect, burden-shifting method established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and refined in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981). *See Ballance v. City of Springfield,* 424 F.3d 614, 617 (7th Cir. 2005). "Absent direct evidence of retaliation, failure to satisfy any element of the *prima facie* case proves fatal to the employee's retaliation claim." *Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 465 (7th Cir.), *cert. denied*, 537 U.S. 820 (2002).

8.      To establish a *prima facie* case of retaliation, Rangel must come forward with evidence that (1) after lodging a complaint about discrimination, (2) only he, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) he was performing his job in a satisfactory manner. *Stone v. City of Indianapolis Pub. Utils. Div.,* 281 F.3d 640, 642 (7th Cir.), *cert. denied*, 537 U.S. 879 (2002).[1]

a.      Rangel has failed to establish a *prima facie* case of retaliation under Title VII. On the contrary, the undisputed evidentiary records shows that Rangel was failing to perform the basic functions of his job by refusing to help customers and refusing to perform his work assignments. In addition, he was violating an explicit Sears policy by ringing up customers under another associate's number. The fourth element of a *prima facie* case requires that Rangel have been performing his job in a satisfactory manner. Sears has shown just the opposite, and the absence of this element is fatal to a *prima facie* case, and the absence of a *prima facie* case leads

---

[1]Sears suggests that there must be a "causal link between the statutory expression and adverse action," but *Stone* changed the law in this circuit on that point by "jettison[ing] the 'causal link' analysis." *Phelan v. Cook County*, 463 F.3d 773, 787 (7th Cir. 2006); *see also Mannie v. Potter,* 394 F.3d 977, 984 (7th Cir. 2005) ("in *Stone v. City of Indianapolis Pub. Util. Div.,* in an opinion that was circulated under Rule 40(e), we held that plaintiffs seeking to prove retaliation under the indirect method need not show "even an attenuated causal link.").

directly to Sears's motion for summary judgment being granted. *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993)("Without a *prima facie* case, the plaintiff cannot withstand summary judgment."), *cert. denied*, 511 U.S. 1005 (1994).

b.     Even if the court could conclude that Rangel had established a *prima facie* case of retaliation associated with the termination of his employment, Sears has come forward with a legitimate, non-discriminatory reason for that termination. That reason is Rangel's poor performance, his deception, his lack of cooperation, and his violation of Sears policies regarding the helpfulness expected of its associates and the more specific policies which have already been identified. Rangel has thus not shown that reason to be a pretext. Pretext means "a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.,* 51 F.3d 64, 68 (7th Cir. 1995); *see also Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir. 2000) (to show pretext, plaintiff must present evidence that each of the proffered reasons is either a lie or completely lacking a factual basis); *Ost v. West Suburban Travelers Limousine, Inc.,* 88 F.3d 435, 441 (7th Cir. 1996) ("a plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions"). Even an employer's erroneous decisionmaking, or exhibiting poor business judgment, is not sufficient to establish pretext. *See Richter v. Hook-SuperRx, Inc.,* 142 F.3d 1024, 1031-32 (7th Cir. 1998).

9.     The Supreme Court has explained that the purpose of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990). Through the process described above, "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 523 U.S. 574, 600 (1998). "'It is well-settled that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)). "Employers may act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not matter." *Kuhn v. Ball State Univ.,* 78 F.3d 330, 332 (7th Cir. 1996).  For the reasons explained above, Rangel has failed to meet this burden. Accordingly, Sears's motion for summary judgment must be **granted** as to Rangel's federal claims.

10.     As noted, Rangel also asserts claims under Indiana state law. However, the federal claims have now been resolved prior to trial. When a district court dismisses the claims over which it had original jurisdiction, it has discretion either to retain jurisdiction over the supplemental claims or to dismiss them. 28 U.S.C. § 1367(c)(3); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 717 (7th Cir.), *cert. denied,* 119 S. Ct. 167 (1998); *Wright v. Associated Insurance Cos., Inc.,* 29 F.3d 1244, 1250 (7th Cir. 1994). The general rule under these circumstances is to dismiss the pendent state law claims.

*Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims") (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)). "[W]hen deciding to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ.,* 484 U.S. at 350). The retention of jurisdiction over the pendent state law claims is permissible under 28 U.S.C. § 1367(a). The retention of such jurisdiction is appropriate in this case. *Lawrence v. Kenosha County,* 391 F.3d 837, 844 (7th Cir. 2004); *see also Grove v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999) (district court did not abuse discretion in retaining jurisdiction over supplemental state claims for reasons of judicial economy); *Sullivan v. Conway,* 157 F.3d 1092, 1095 (7th Cir. 1998) (federal-state comity not furthered by sending "doomed litigation . . . back to the state court to be dismissed there."); *Van Harken v. City of Chicago,* 103 F.3d 1346, 1354 (7th Cir. 1997) (where "an interpretation of state law that knocks out the plaintiff's state claim is obviously correct, the federal judge should put the plaintiff out of his misery then and there, rather than burdening the state courts with a frivolous case").

11. Defamation is "that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Davidson v. Perron,* 716 N.E.2d 29, 37 (Ind.Ct.App. 1999). To establish defamation, a plaintiff must prove the following elements: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. *Id.* A defendant in a defamation case is entitled to summary judgment if he demonstrates that the undisputed material facts negate at least one element of the plaintiff's claim. *Kitco v. Corporation for General Trade,* 706 N.E.2d 581, 587 (Ind.Ct.App. 1999).

a. Rangel's defamation claim is based entirely on a statement that he assumes the store manager made to the EEOC. Specifically, he was asked if he was alleging that the manager, Annette Fields, "slandered [him] and made false or defamatory statements about [him]." Rangel responded: "Yes. She said I showed no concern for the Hispanic population." When asked if there were any other false or defamatory statements Rangel believed the manager made about him, he responded: "I can't think of anything else."

b. Rangel's claim of defamation is based on his conjecture as to what the store manager said. Rangel has not attested to that conjecture under oath, but even if he had it would not suffice to establish that the statement was made. *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir.)(assertions based on speculation or conjecture do not withstand summary judgment), *cert. denied,* 528 U.S. 986 (1999). Even if the there was an adequate showing that the statement was made, moreover, a statement that an individual shows "no concern" for a population with a specific ethic makeup is not a statement which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about

the plaintiff, and hence was not defamatory. *See Stevens v. Tillman*, 855 F.2d 394 (7th Cir. 1988)(under Illinois law, the action of the president of parent teacher association in calling elementary school principal "racist" was not defamation under Illinois law, even though comment implied professional wrongdoing).

c.      Even if Ms. Fields had made a statement about Rangel to the EEOC, moreover, it does not support  his defamation claim because he consented to publication. *See Ernst v. Indiana Bell Telephone Co.,* 475 N.E.2d 351, 355 (Ind.Ct.App. 1985) ("statements made during grievance meetings, at an arbitration hearing, and in the processing of [plaintiff's] unemployment compensation and workmen's compensation claims are similarly insufficient to support a cause of action for defamation" because plaintiff consented to publication). "[J]ust as there can be no actionable defamation if there is no publication, one who consents to publication of a statement is barred from recovery." *Id.* (quoting *Brockman v. Detroit Diesel Allison Div.,* 366 N.E.2d 1201 (Ind.Ct.App. 1977). By filing charges of discrimination with the EEOC, Rangel "submitted his conduct to investigation, and he consented to the company's publication of its viewpoint in this matter. One who agrees to submit his conduct to investigation knowing that its results will be published consents to that publication." *Id.*

12.      In summary, therefore, there is no competent evidence that the statement attributed to the store manager was made. The absence of such evidence cannot be ignored. See *McKinney v. Duplain,* 463 F.3d 679, 691 n.5 (7th Cir. 2006)("district courts should thoroughly consider challenges to the admissibility of evidence before ruling on summary judgment motions, as 'when acting on a motion for summary judgment, the judge [should] consider[ ] only evidence that would be admissible at trial.'")(quoting *Gustovich v. AT&T Communications, Inc.,* 972 F.2d 845 (7th Cir. 1992)). Even if the statement was made, it was not defamatory for the reason stated above. Even if the statement was made and would otherwise have been defamatory, Rangel consented to the statement by filing the charge of retaliation with the EEOC and thus consented to statements made in the course of the agency's investigation. As to this point as well, therefore, Sears' motion for summary judgment must be **granted.**

Judgment consistent with this Entry shall now issue. The costs of this action are assessed against the plaintiff.

**IT IS SO ORDERED.**

Date:   11/14/2006
_____

_[signature]_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana